KISTLER, J.
**747 In this property tax case, the magistrate granted taxpayer part of the relief that he requested. The magistrate accepted the property values that taxpayer requested for the two most recent tax years but did not accept the values that taxpayer requested for the first four tax years. Taxpayer appealed from the magistrate's decision by filing a timely complaint in the regular division of the tax court. The Department of Revenue (the department) did not appeal or seek any affirmative relief from the magistrate's decision. Instead, the department moved to dismiss the complaint that taxpayer had filed in the tax court. The tax court granted the department's motion, dismissed taxpayer's complaint, and entered a judgment that gave effect to the magistrate's decision.
Taxpayer has appealed from the tax court's judgment to this court, and the department has cross-appealed. The primary question this case presents arises on the department's cross-appeal-whether the tax court erred in giving effect to the magistrate's decision granting taxpayer's requested relief for the two most recent tax years. For the reasons set out below, we affirm the tax court's judgment.
The facts in this case are primarily procedural. To the extent that historical facts are relevant, we take them from taxpayer's complaint and assume that they are true since this case arises from the tax court's ruling dismissing the complaint. The complaint alleges that, as a result of a clerical error, taxpayer's house has been overvalued since 1996. Except for the three most recent tax years, it is unclear from taxpayer's complaint whether he believes that the clerical error affected the real market value of his house, its maximum assessed value, its assessed value, or all three values.[1]
*377 **748 Taxpayer did not take any steps to correct that clerical error until 2016 when he filed an appeal in the magistrate division of the tax court. His complaint alleges that, during an initial phone conference, the magistrate encouraged taxpayer and the county assessor to see if they could settle the dispute. After reaching a tentative agreement, taxpayer and the county assessor discussed their agreement with the magistrate during a second phone conference. The magistrate gave his "unconditional approval" to the agreement, and taxpayer and the county reduced their agreement to writing.
As part of the agreement, taxpayer and the county assessor stipulated to the property's real market values, maximum assessed values, and assessed values for six tax years-the then-current tax year (2015-16) and the five preceding tax years (2010-11 to 2014-15). Except for the three most recent tax years, neither the agreement nor the complaint specifies which of the stipulated values represents a change from the values listed on the county's assessment and tax rolls. For each of the three most recent tax years, the agreement includes the following parenthetical: "(no change to RMV; MAV change only)." We infer from that parenthetical that the stipulated real market value for each of those three years is the same as the real market value listed on the rolls but that the stipulated maximum assessed value for each tax year is lower than the maximum assessed value listed on the rolls.
When taxpayer and the county assessor presented the stipulated agreement to the magistrate, the magistrate departed from his earlier "unconditional approval" of their agreement. He told them that he lacked statutory authority to adjust the values on the rolls to conform to the stipulated values for the first three tax years (2010-11 to 2012-13). Having identified that problem, the magistrate asked taxpayer if he wished to adhere to the stipulated values for the last three tax years (2013-14 to 2015-16). Taxpayer said that he did.
Given taxpayer's choice, the magistrate issued a written decision in which he explained that, because taxpayer had not challenged the values for his property by **749 appealing to the Board of Property Tax Appeals, the magistrate's authority to adjust the property values for taxpayer's home was limited by statute to the current tax year (2015-16) and the two immediately preceding tax years (2013-14 and 2014-15). See ORS 305.288(3).[2] The magistrate accordingly made no changes to the real market value, the maximum assessed value, or the assessed value on the rolls for the first three tax years (2010-11 to 2012-13).
Turning to the three most recent tax years, the magistrate explained that taxpayer lacked standing to challenge the values for tax year 2013-14. He noted that, for that year, the parties had agreed to change only the property's maximum assessed value. However, the property's real market value, which the parties had not sought to change, was lower than the maximum assessed value. Because the assessed value (which is used to calculate the taxes owed) is the lower of the real market value or the maximum assessed value, any error in calculating the maximum assessed value did not affect the taxes owed for that year.
The magistrate then turned to the remaining two tax years (2014-15 and 2015-16). After noting that ORS 305.288(3) authorized him to adjust the property values for those *378 years, the magistrate accepted the stipulated maximum assessed value for each of those two years. Because the stipulated maximum assessed value for each year was lower than the real market value, the stipulated maximum assessed value provided the assessed value used to determine the taxes owed. The magistrate's decision directed that the values for the real property listed on the rolls for those two tax years should be adjusted accordingly.
The Oregon tax statutes provide that "[a]ny party dissatisfied with a written decision of a magistrate may **750 appeal the decision to the judge of the tax court by filing a [timely] complaint in the regular division of the tax court." ORS 305.501(5)(a). Taxpayer was dissatisfied with the magistrate's decision because it did not adjust the values for the first three tax years to conform to the stipulated agreement,[3] and he appealed to the tax court by filing a complaint in the regular division. Pursuant to statute, taxpayer named the department as the defendant. See ORS 305.501(5)(c).[4]
The department did not appeal from the magistrate's decision, although it could have done so pursuant to ORS 305.501(5)(b).[5] The department, however, appeared as a defendant in the proceeding that taxpayer had initiated in the tax court and moved to dismiss taxpayer's complaint. The department argued that, to the extent that taxpayer was relying on the stipulated agreement with the county assessor in the magistrate division, that agreement did not bind the department in the regular division. The department also argued that, to the extent that taxpayer was advancing a claim of error that did not depend on the stipulated agreement, taxpayer was seeking to adjust the maximum assessed values for his property in a way that the statutes and the constitution do not permit.
The tax court granted the department's motion to dismiss. Work v. Dept. of Rev. , 22 OTR 396 (2017). It agreed with the department that the stipulation between taxpayer and the county in the magistrate division did not bind the **751 department in the regular division. Id. at 403. It also agreed with the magistrate that the tax court (both the magistrate and regular divisions) lacked statutory authority to adjust the property values for the first three tax years. Id. at 404-06. Finally, the tax court concluded that taxpayer had no standing to contest the magistrate's decision regarding the two most recent tax years because, for those two years, the magistrate had given taxpayer everything he asked for. Id. at 407-08.
During the hearing on the department's motion to dismiss, the department argued that, if the tax court dismissed taxpayer's complaint, the magistrate's decision accepting the stipulated values for the two most recent tax years should not be given any effect and the values for taxpayer's home for those two tax years should revert to the values on the tax and assessment rolls. The tax court disagreed. It reasoned that, if the department believed that that part of the magistrate's decision should not be given any effect, it should have appealed to the tax court from that part of the decision or, at a minimum, counterclaimed for affirmative relief once taxpayer appealed.[6] Id. at 410-11.
*379 The department, however, had neither appealed from the magistrate's decision nor sought affirmative relief from the part of the magistrate's decision with which it disagreed. Instead, it had only moved to dismiss taxpayer's complaint. See id. at 414-18. The tax court accordingly declined to grant the department relief as to those two tax years and incorporated that part of the magistrate's decision in its judgment.
Taxpayer has appealed from the tax court's judgment, arguing that the tax court should not have dismissed his complaint. The department has cross-appealed from the tax court's judgment, arguing that, once taxpayer filed an appeal in the tax court, no part of the magistrate's decision had any further effect. We begin with taxpayer's appeal.
**752 I. TAXPAYER'S APPEAL
On appeal to this court, taxpayer asks us to give effect to the entire stipulated agreement between him and the county assessor. He argues that the "magistrate partially erred when he entered his final opinion, striking down [the first] 3 years of the stipulation" and that the tax court "partially erred when [it] enforced the magistrate's final decision, without reinstating the [first] three years" of the stipulation. As we understand taxpayer's argument, it rests on the unexplained assumption that the stipulated agreement between taxpayer and the county assessor in the magistrate division was binding and should have been given effect in its entirety both by the magistrate and by the tax court. Taxpayer never addresses the reasons that the magistrate advanced for not giving effect to the entire stipulation, nor does he address the tax court's explanation as to why the stipulated agreement was not binding on the department in the regular division.
In considering the magistrate's reasons for not giving complete effect to the stipulation, we note that taxpayer's contrary argument appears to assume that ORS 305.288(3) is comparable to a statute of limitations that any party can waive in settling a claim. By its terms, however, ORS 305.288(3) is a limitation on the tax court. It specifies the relief that the tax court "may order" if certain conditions are met: The tax court may adjust the property values on the rolls only for the current tax year and the two immediately preceding tax years. Without some explanation from taxpayer, and he provides none, as to why the county and a private party can expand the tax court's authority by agreement, we are hesitant to accept taxpayer's position.
Taxpayer's argument gives us pause for another reason. It assumes that the county's stipulation in the magistrate division bound the department in the regular division. The tax statutes, however, give the department an independent role to play in ensuring that taxes are assessed equally throughout the state. ORS 306.115(1) vests the department with "general supervision and control over the system of property taxation throughout the state" so that all properties are taxed "according to the statutes and Constitutio[n]
**753 of the State of Oregon." Similarly, the statutes authorize the department to appeal a magistrate's decision even though the department was not a party to the hearing before the magistrate, ORS 305.501(5)(b), and they require that the department be named the defendant in an appeal to the regular division of the tax court, ORS 305.501(5)(c).
Given the department's statutorily recognized role in ensuring that all properties are taxed uniformly, we are hesitant to conclude that the county's stipulation in the magistrate division bound the department in the regular division. Without a cogent explanation as to why the tax court erred, we decline to disturb the tax court's ruling that the county's stipulation in the magistrate division neither bound the department in the regular division nor required the tax court to adjust the values for taxpayer's home for any tax years other than the current year and the two immediately preceding years. See *380 In re Bertoni , 363 Or. 614, 622-23, 426 P.3d 64 (2018) (declining to disturb the trial panel's ruling in the absence of a cogent argument as to why it erred). In so ruling, we do not foreclose a considered argument in a future case that a different conclusion is appropriate.
II. THE DEPARTMENT'S CROSS-APPEAL
The department argues on cross-appeal that the tax court erred in giving any effect to the magistrate's decision. As we understand the department's argument, it contends that once a taxpayer appeals from a magistrate's decision by filing a complaint in the regular division, the magistrate's decision has no further effect. That is true, in the department's view, even if only one party appeals from only part of the magistrate's decision. As the department explains, in that situation, the unchallenged part of the magistrate's decision may be given effect only if the parties to the proceeding before the tax court stipulate to it.[7]
**754 The question that the department raises poses an issue of statutory construction, and the department finds a complete answer to that question in the text of ORS 305.425(1). That statute provides:
"All proceedings before the judge of the tax court shall be original, independent proceedings and shall be tried without a jury and de novo."
The department infers from the statutory directive that all proceedings before the tax court shall be "independent" and "de novo" that, when a party files a complaint in the regular division of the tax court, the entire proceeding starts anew. It follows, the department concludes, that the magistrate's decision has no further effect once any party dissatisfied with the magistrate's decision appeals from any part of that decision by filing a complaint in the regular division. See ORS 305.501(5)(a) (specifying how a party appeals from a magistrate's decision).
In our view, ORS 305.425(1) does not support the conclusion that the department draws from it. That subsection describes how the tax court reviews appeals from a magistrate's decision. It does not define the scope of the issues before the tax court when a party appeals from only part of a magistrate's decision. To say, as the statute does, that the tax court reviews the issues before it "de novo" or "independent[ly]" from the magistrate's decision does not answer the question whether an appeal from one part of the magistrate's decision will put the remainder of the magistrate's decision in play before the tax court.
Two other statutes provide guidance. ORS 305.501 (5)(a) provides that "[a]ny party dissatisfied with a written decision of a magistrate may appeal the decision to the judge of the tax court." That statute recognizes that more than one party may be dissatisfied with a magistrate's decision, that different parties may be dissatisfied with different parts of a magistrate's decision, and that each party can appeal to the tax court judge by filing a complaint in the regular division. The legislature's recognition that more than one party can appeal from a magistrate's decision if each party is dissatisfied with a different part of the magistrate's decision is difficult to reconcile with the department's position here. If one **755 party's appeal from only part of the magistrate's decision were always sufficient to put the entire decision in play, then there would have been no need to permit multiple parties to appeal simultaneously.
ORS 305.501(7) also provides guidance. It states:
"If no appeal is taken to the tax court judge within 60 days, the decision of the magistrate shall become final. The tax court shall enter a judgment enforcing all final decisions of the magistrate, which *381 judgment shall be binding upon all parties."
The first sentence of that subsection states that the magistrate's decision will be final and enforceable if "no appeal is taken to the tax court judge." To be sure, that sentence does not address whether, if one party appeals from part of the magistrate's decision, the unchallenged part of the decision will become final and enforceable. However, the second sentence provides that, if no appeal is taken, the "tax court shall enter a judgment enforcing all final decisions of the magistrate, which judgment shall be binding upon all parties." The combination of the singular term "judgment" and the plural term "decisions" implies that a single judgment may enforce one or more "final decisions of the magistrate." Put differently, if a separate part of a magistrate's decision is not appealed or affirmatively challenged before the tax court, the use of the plural term "decisions" implies that that part of the magistrate's decision will become a final and enforceable part of the tax court's judgment.
The text, however, is not dispositive, and we also consider the statutory context in determining the legislature's intent. See Stevens v. Czerniak , 336 Or. 392, 401, 84 P.3d 140 (2004). "Context includes other provisions of the same statutes, the session laws, and related statutes." Id. It also includes "the preexisting common law and the statutory framework within which the law was enacted." Id. (internal quotation marks omitted).
In 1995, the legislature created the magistrate division and substituted a hearing before the magistrate division for an administrative appeal before the department of revenue. See Or. Laws 1995, ch 650. Before 1995, if a taxpayer was dissatisfied with the assessed property values, **756 the taxpayer had to exhaust his or her administrative remedies by seeking relief from the department before going to the Oregon Tax Court. Former ORS 305.275(4) (1993) (providing that no person could appeal to the Oregon Tax Court "on any matter arising under the revenue and tax laws administered by the department unless the person first exhaust[ed] the administrative remedies provided by the department and the director").[8] If a taxpayer were dissatisfied with the department's administrative decision, the taxpayer could take an appeal "by filing *** a complaint with the clerk of the Oregon Tax Court" within 60 days after the department's order was served on the taxpayer. Former ORS 305.560(1) (1993). The statutes provided then, as they do now, that "[a]ll proceedings before the [tax] court shall be original, independent proceedings and shall be tried without a jury and de novo." ORS 305.425(1) (1993).
When the 1995 legislature substituted a hearing before the magistrate division for an administrative appeal before the department of revenue, it was settled law that a party could appeal to the tax court from only one part of the department's decision and that the remainder of the department's decision, if not timely challenged, would be final and binding. Nepom v. Dept. of Revenue , 272 Or. 249, 536 P.2d 496 (1975). In Nepom , the county assessor had valued the taxpayer's land and improvements separately. After unsuccessfully seeking relief before the department, the taxpayer appealed to the tax court, challenging only the value that the department had placed on her improvements. Id. at 250, 536 P.2d 496. She did not challenge the value that the department had placed on her land. The tax court reduced the value of her improvements and increased the value of her land by a corresponding amount. Id. at 251, 536 P.2d 496.
The taxpayer appealed to this court, arguing that she could choose to appeal only one part of the department's decision and that the tax court lacked the authority to alter the unchallenged part of the department's decision. This court agreed. Id. at 256, 536 P.2d 496. It explained:
"We conclude that plaintiff was entitled to challenge only the value of the improvements, and that the Tax Court **757 was entitled to reduce the value of such improvements; however, as the value of the land was not an issue in the case, the Tax Court *382 acted improperly in adding the reduction in the improvement values to the land."
Id. ; see also Village at Main Street Phase II v. Dept. of Rev. , 356 Or. 164, 169, 339 P.3d 428 (2014) (summarizing Nepom ).
In substituting a hearing before the magistrate division for an administrative appeal before the department, the legislature left intact the existing procedures for appealing to the tax court. A party can appeal from the magistrate's decision in the same way that a party could appeal from the department's decision: by filing a complaint in the tax court. Compare ORS 305.501(5)(a)with former ORS 305.560(1) (1993). Moreover, all proceedings before the tax court judge remain "original, independent proceedings [that] shall be tried without a jury and de novo." Compare ORS 305.425(1)with ORS 305.425(1) (1993).
We draw two conclusions from that context. First, when the legislature created the magistrate division in 1995, it was aware of Nepom and intended to permit a party to appeal to the tax court from only a part of the magistrate's decision. Second, unless the party that was dissatisfied with the unchallenged part of the magistrate's decision sought some form of affirmative relief, that part of the magistrate's decision would become final.[9]
We recognize that, since 1995, the legislature has created limited exceptions to the rule in Nepom . For example, in 2011, the legislature provided that, when one party appeals the real market value of one component of a property tax account, " 'any other party to the appeal may seek a determination *** of the total real market value of the property tax account, the real market value of any or all of the other components of the account, or both.' "
**758 Village at Main Street Phase II , 356 Or. at 170, 339 P.3d 428 (quoting ORS 305.287). However, that exception proves the rule. If the department's understanding of the effect of an appeal from the magistrate's decision to the tax court were correct, there would have been no reason for the legislature to have enacted the 2011 statute. In our view, unless the department can come within the terms of the 2011 statute or a similar exception, the statutory context strongly suggests that the department cannot rely on the fact that taxpayer appealed part of the magistrate's decision to say that the entire decision should be given no effect.[10]
In addition to text and context, we also consider the legislative history of the 1995 statute that created the magistrate division. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). Neither party, however, relies on the legislative history, and our review of it shows that the legislature focused primarily, if not exclusively, on the reason for replacing the department with the magistrate division. Specifically, there was a perception that the department was neither neutral nor timely in reviewing challenges to tax assessments, and the legislature sought to provide a more neutral body-the magistrate division-that would perform the same function that the department previously had performed in reviewing those assessments. See, e.g. , Testimony, Senate Committee on Judiciary, HB 2325, Apr 24, 1995, Ex I (statement of Betsy Bailey, Associated Oregon Industries). The legislative history does not suggest that, in replacing *383 the department with the magistrate division, the 1995 legislature intended to depart from the rule in Nepom .
Considering the text, context, and legislative history of the statutes authorizing appeals from the magistrate division to the tax court, we conclude that a party may **759 appeal from a separate part of the magistrate's decision without necessarily putting the other parts of the magistrate's decision at issue before the tax court. A party who is dissatisfied with a separate part of the magistrate's decision must either appeal from that part of the decision to the tax court, seek affirmative relief in some other manner, or come within a statutory exception to that limitation.
With that understanding of the tax statutes in mind, we return to this case. Although the complaint that taxpayer filed in the tax court is not a model of clarity, we conclude that the complaint only challenged the magistrate's decision regarding the first three tax years (2010-11 to 2012-13).[11] Indeed, because the magistrate's decision adopted the stipulated values for the last two tax years, taxpayer's complaint necessarily was not directed at those two tax years. The department does not appear to disagree with that understanding of taxpayer's complaint.[12]
A challenge to one tax year is separate from a challenge to another tax year in much the same way that a challenge to one component of a parcel's real market value was separate from a challenge to another component of the parcel's value in Nepom . Because taxpayer's complaint did not challenge the last two tax years, the department needed to seek some form of affirmative relief from the magistrate's decision or identify some exception to the rule established in Nepom if it wanted to alter that part of the magistrate's decision.[13] Because it has done neither, we affirm the part of the tax court's judgment that the department challenges on cross appeal.
The judgment of the Tax Court is affirmed.

The real market value refers generally to the value that a willing seller would pay a willing buyer for the property on the assessment date. See ORS 308.205(1) ; Dept. of Rev. v. River's Edge Investments, LLC , 359 Or. 822, 825, 377 P.3d 540 (2016). The maximum assessed value is, as a general rule, the property's real market value in 1995 discounted by 10 percent and then adjusted by up to three percent annually to reflect increases in real market value. See Or. Const., Art. XI, § 11 (1); ORS 308.146(1). The assessed value refers to the lower of the real market value or the maximum assessed value. ORS 308.146(2). In a rising market, the maximum assessed value often will be lower than the real market value and thus will establish the assessed value on which property taxes are calculated.

ORS 305.288(3) provides:
"The tax court [the magistrate division or the regular division] may order a change or correction applicable to a separate assessment of property to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if, for the year to which the change or correction is applicable, the assessor or taxpayer has no statutory right of appeal remaining and the tax court determines that good and sufficient cause exists for the failure by the assessor or taxpayer to pursue the statutory right of appeal."

Taxpayer may have been dissatisfied with the magistrate's resolution of the fourth tax year (2013-14) because the magistrate did not accept the stipulated maximum assessed value for that year. However, in this court, taxpayer has clarified that he is not challenging the magistrate's decision regarding tax year 2013-14. As noted above, the magistrate explained that because the real market value on the rolls for that tax year was lower than the maximum assessed value in the stipulated agreement, changing the maximum assessed value would have no practical effect on taxpayer.

ORS 305.501(5)(c) provides that, "[i]f a decision of a magistrate involves any matter arising under the property tax laws and a party other than a county appeals the decision to the tax court judge, the Department of Revenue shall be the defendant."

Although the department was not a party to the hearing before the magistrate and had not intervened in that hearing, ORS 305.501(5)(b) provides that the department may take an appeal to the tax court judge when "a decision of a magistrate involves any matter arising under the property tax laws and a county was a party to the proceeding before the magistrate, *** whether or not the department had intervened in the proceeding before the magistrate."

Because a party appeals to the tax court by filing a complaint in that court, it is possible that including a counterclaim as part of an answer to a taxpayer's complaint might have sufficed as a request for affirmative relief. Although the tax court expressed its view that only an appeal to the tax court would have been sufficient, its resolution did not depend on such a holding. See 22 OTR at 397, 420. It was sufficient for the tax court to conclude that the department had not sought any affirmative relief from the magistrate's decision either by way of appeal or otherwise.

In explaining how an unchallenged part of a magistrate's decision might be given effect, the department reasons:
"[An] appeal [from a magistrate's decision] may challenge only a portion of the magistrate decision (as taxpayer did in this case) and the parties may stipulate to the entry of judgment as to the unchallenged portion of the magistrate decision (which the parties in this case did not)."
(Bracketed material added; parentheticals in original.)

Certain exceptions applied but they are not relevant to this issue.

We recognize that, when Nepom was decided, the consequences of a county's failure to cross-appeal an adverse ruling from the department had limited practical effect; the county could always reassess the value of the property the next year. See Nepom , 272 Or. at 255-56, 536 P.2d 496 (making that observation). With the advent of Measure 50, the consequences of such a failure may continue to affect the maximum assessed value of the land. See Village at Main Street Phase II , 356 Or. at 169-70, 339 P.3d 428. Although that change places a greater premium on timely cross-appeals, it does not alter the essential procedural mechanism.

As the tax court noted, there may be other procedural means by which the department potentially could challenge an adverse magistrate's decision that it had not appealed. See 22 OTR at 414-15. For example, perhaps the department could have sought affirmative relief by filing a counterclaim rather than filing a complaint. Or if taxpayer's complaint had put the last two tax years in play, perhaps it would have been sufficient if the department had moved for summary judgment rather than moving to dismiss taxpayer's complaint. The department, however, did not pursue any of those alternative procedural ways of undoing the magistrate's decision, and we express no opinion on whether any or all of them would have been effective.

As noted above, it is possible to read taxpayer's complaint as also challenging the magistrate's decision regarding the fourth tax year (2013-14). However, taxpayer has limited his challenge in this court.

As noted above, the department argues that an "appeal may challenge only a portion of the magistrate decision (as taxpayer did in this case) ***."

Because we agree with the tax court that the department failed to seek affirmative relief from the separate, adverse part of the magistrate's decision, we do not consider its challenges to the merits of that decision.