No. 12          August 5, 2020          191

THE OREGON TAX COURT
REGULAR DIVISION

Mike HILLENGA
and Sheri Hillenga,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

(TC 5402)

In this personal income tax case, Plaintiffs submitted a motion to stay their obligation to pay the tax assessed, based on undue hardship. After concluding that the "tax assessed" referred to the amount stated in the Notice of Assessment issued by Defendant from which Plaintiffs appealed, the court ordered Plaintiffs to either pay the tax or submit a supplemental hardship affidavit after Defendant brought forward information regarding properties not listed by Plaintiffs in their initial affidavit.

Submitted on Plaintiffs' motion for stay of payment of income tax.

Mike Hillenga and Sheri Hillenga, Plaintiffs, filed the motion *pro se*.

Darren Weirnick, Senior Assistant Attorney General, Department of Justice, Salem, filed a response for Defendant.

Decision rendered August 5, 2020.

**ROBERT T. MANICKE, Judge.**

In this personal income tax case for tax year 2009, Plaintiffs (taxpayers) request a stay, based on undue hardship, of their obligation under ORS 305.419[1] to pay the tax assessed, penalties, and interest before proceeding with their appeal. Defendant Department of Revenue (department) issued a notice of assessment dated November 3, 2016 (the "Notice of Assessment"), showing a total amount due of $37,934.74. Taxpayers appealed to the Magistrate Division, which on December 20, 2019, decided certain amounts in

---

[1] Citations to the Oregon Revised Statutes ("ORS") are to the 2019 edition unless otherwise indicated.

favor of taxpayers as conceded by the department and denied taxpayers' appeal as to all remaining issues. Taxpayers filed their complaint in this division on January 17, 2020, without paying any amount of tax, interest, or penalties, and without any accompanying affidavit or motion seeking hardship relief under ORS 305.419(3). The department moved to dismiss the complaint on that ground. The court denied the motion and granted taxpayers 30 days to file an affidavit as provided in ORS 305.419(3). On March 27, 2020, taxpayers timely filed an affidavit and accompanying motion for stay of payment of the tax. On April 21, 2020, the department objected and renewed its motion to dismiss (the "Objection"), based on three supporting declarations and numerous accompanying exhibits containing evidence of taxpayers' financial circumstances. Taxpayers filed several responses in mid-June 2020.

A.   *Amount of "Tax Assessed, and All Penalties and Interest Due"*

The court first addresses a preliminary matter that taxpayers have raised in their complaint and in their responses to the department's Objection. Taxpayers point out that the department conceded certain computational items and deductions in the Magistrate Division but has failed to reduce the assessment accordingly. The decision concluded that, "as conceded by Defendant," taxpayers were entitled to claim cost of goods sold of $61,768 and deductions for business expenses, charitable contributions and medical expenses totaling $12,453. Taxpayers contend that they should not be required to pay amounts the department has admitted they do not owe, as a condition of pursuing their appeal. Taxpayers listed the department's failure to provide an "updated calculation" of their liability as one reason for their nonpayment when they filed their complaint. The department responds that (1) the amounts due under ORS 305.419 are those amounts stated in the Notice of Assessment; (2) no statute requires the department to issue a revised assessment in a case that is proceeding to the Regular Division on appeal; and (3) any such requirement would conflict with the *de novo* character of the proceeding in the Regular Division, where a party may choose not to make the same concessions, or where new evidence

may support the same, or greater, assessment on different grounds.

The court agrees with the department that the amount taxpayers must pay, unless the court finds undue hardship, is the sum of the tax, penalties, and interest shown on the Notice of Assessment. ORS 305.419(1) requires taxpayers to pay "the tax assessed, and all penalties and interest due." The court considers the text, context, and any applicable legislative history of this phrase.[2] *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The phrase "tax assessed" has remained unchanged in subsection (1) since the statute's enactment in 1982. The ordinary meaning of "assess," as of that year, was:

> "1 : to determine the rate or amount of (as a tax, charge, or fine) *** 2 a : to determine the amount of and impose (as a tax, charge, or fine) according to an established rate or apportionment *** 2 b : to subject to a tax, charge, or levy so determined 3 : to make an official valuation or estimate of (property) esp. for the purposes of taxation 4 : to analyze critically and judge definitively the nature, significance, status, or merit of : determine the importance, size, or value of *** syn see ESTIMATE."

*Webster's Third New Int'l Dictionary* 131 (unabridged ed 1976). If viewed as a technical legal term, the meaning of "assess" was similar:

> "To ascertain; fix the value of. To fix the amount of the damages or the value of the thing to be ascertained. To impose a pecuniary payment upon persons or property. To ascertain, adjust, and settle the respective shares to be contributed by several persons toward an object beneficial to them all, in proportion to the benefit received. To tax ***."

*Black's Law Dictionary* 106 (5th ed 1979). Regardless of whether the legislature used "assess" in its ordinary sense or as a technical term, the definition most relevant in this

---

[2] The court has found nothing on point in the legislative history of the 1982 act creating ORS 305.419(1) and (2). *See* Or Laws 1982, Special Session 1, ch 29, §§ 2, 3 (HB 331); Tape Recording, House Revenue Committee, HB 3314, Feb 18, 1982 (1982 Special Session) Tapes 46 & 47 (H Rev Comm Feb 18, 1982); Tapes 30 & 31 (S Rev Comm Feb 22, 1982) (HB 3314). *See Peterson v. Dept. of Rev.,* 23 OTR 554, 556-61 (2019); *Lamka v. Dept. of Rev.*, 23 OTR 566, 571-73 (2019) (examining legislative history of ORS 305.419).

circumstance was to "determine," "ascertain," or "fix" the amount of the tax.[3] In this case, the department did that when, after examining taxpayers' returns, it issued its Notice of Assessment to taxpayers itemizing the tax, penalties, and interest amounts owing. The court concludes that the text of ORS 305.419(1) supports the department's position.

Turning to the context in which the phrase appears, the court has found no statute that requires the department to issue a new notice of assessment at any stage of a judicial appeal.[4] The court does not find this surprising, as an income tax appeal generally results in an order or opinion, which the prevailing party reduces to a form of judgment to which the other party may object. If the court's order or opinion determines that the taxpayer does, in fact, owe tax, the form of judgment typically is a money judgment that, when executed and absent an appeal, supersedes the notice of assessment and fulfills a similar collection function. *Compare* Tax Court Rule 70 A(2) (requirements for form of money judgment) *with* ORS 314.417 (lien for unpaid income tax arises "at the time of assessment") and ORS 314.407 (2)(a), (b) (defining "time of assessment" by reference to issuance of notice of assessment). The magistrate's decision in this case is not a judgment, nor is it a new assessment of tax; it simply decides some of the many discrete amounts that contribute to the overall determination of tax owed.

Continuing the examination of statutory context, the second subsection of the statute at issue here provides a clear answer as to two of the three items that must be paid:

> "*Penalty and interest* due under subsection (1) of this section *are the amounts stated in the* order, *notice of assessment*, notice of refund denial or proposed adjustment under ORS 305.270 by the department from which the appeal is taken."

---

[3] The court does not apply in this case those definitions relating to assessment of property for property tax purposes. *See, e.g.*, *Gray v. Dept. of Rev.*, 23 OTR 220 (2018).

[4] In the court's discussion of statutory context, the court continues to refer to the 2019 edition of the ORS, but the referenced statutes have not changed in respects material to this case since the legislature enacted ORS 305.419(1) in 1982.

ORS 305.419(2) (emphases added). Subsection (2) does not, however, expressly state that the first amount at issue—the "tax assessed"—must also be the amount shown in the Department's notice. The court therefore considers whether this omission from subsection (2) indicates that the legislature intended this court to look to some other source to find the "tax assessed." The court is skeptical that the legislature intended such an approach, particularly if the amount of "tax assessed" stated in the alternative source were different from the amount stated in the notice of assessment. That is because interest and most penalties are not fixed dollar amounts, but rather are measured as percentages of the tax due. *See, e.g.,* ORS 305.220(1) (interest amount is a "rate" multiplied by amount of "deficiency"); ORS 314.400 (prescribing certain penalties as percentage of the amount of the "tax" or "deficiency"). Taxpayers would use one amount of tax to determine the tax due on or before filing their complaint, but the penalty and interest also due with their complaint would be based on a different amount.

An expanded examination of statutory context reveals no mention of any plausible alternative source to which the court should look for the amount of "tax assessed." Income taxes generally are "assessed" by action of the department, with written notice to the taxpayer. *See* ORS 305.265(7) (following audit and post-audit procedures, "the department shall assess the deficiency, plus interest and penalties, if any, and shall send the person a notice of assessment, stating the amount so assessed, and interest and penalties."); ORS 314.440(2) (in "jeopardy" assessment, department "shall give notice to the taxpayer of all taxes so assessed"); *but see* ORS 314.407(1) (income tax assessed without action of department when taxpayer underpays amount reported on return).[5] The court repeats that no

---

[5] By contrast, the context offers plausible reasons why the legislature *did* specify in subsection (2) of ORS 305.419 that the amounts of interest and penalties to be paid are as stated in the notice of assessment. Interest on an income tax deficiency begins to accrue when the tax is due and continues to accrue beyond the date of assessment, until the tax is paid. *See* ORS 314.395. "Penalties" is a broad term that could include criminal amounts that would be determined outside the assessment process. *E.g.,* ORS 314.991(1) (penalty up to $1,000 for tax evasion, to be "recovered by the Attorney General" in criminal action). This context suggests that the legislature specifically referred to the amounts in the notice of assessment simply for the practical purpose of fixing these amounts in

statute requires the department to redetermine the amount of tax or issue a new notice after a magistrate's decision. Based on this context, the court concludes from the statutory context that "tax assessed" refers to the amount stated in the Notice of Assessment from which taxpayers appealed to the Magistrate Division.

As the final piece of this analysis, the court turns to the Supreme Court's recent decision in *Work v. Dept. of Rev.*, 363 Or 745, 429 P3d 375 (2018). The taxpayer in that case appealed to this division only certain parts of a magistrate's decision, leaving other parts that favored his position unappealed. *Id.* at 755. The Supreme Court did not hold that the unappealed portion of the magistrate's decision became immediately enforceable or binding. Rather, the court found that the statutory text "implies that [the unappealed] part of the magistrate's decision *will* become a final and enforceable part of the tax court's *judgment*" if the opposing party does not challenge that part by appropriate means. *Id.* (emphases added); *see id.* at 758 & n 10 (discussing possibility of department's appeal and potential alternative means to challenge portions taxpayer does not appeal); *accord Work v. Dept. of Rev.*, 22 OTR 396, 410-11 (2017), *aff'd* 363 Or 745 (2018) ("unless the magistrate's alleged error is [contested], it has the full force of law *once a judgment is issued giving it effect*") (emphasis added).[6] When a party timely appeals a magistrate's decision, the Magistrate Division does not issue a judgment in the case; this division does so, once the parties have litigated the issues in this division. *See* ORS 305.501(7). Because no judgment exists at the time of an appeal to this division, the magistrate's decision is not enforceable. Moreover, at the stage when a taxpayer files a complaint in this division and the "tax assessed" is due, it may be too early to know whether the department will contest any portions of the magistrate's decision that the

---

time and limiting them to the amounts due pursuant to the audit, as opposed to criminal or other proceedings.

[6] The court makes no finding as to whether the department has challenged any portion of the magistrate's decision in this case, nor does the court express any view as to whether a defendant in this division is required to file a complaint in order to challenge any portion of a magistrate's decision, or whether a defendant may use a counterclaim or other procedural means to do so.

taxpayer chooses not to appeal.[7] Therefore, it may be impossible to predict whether those portions of the magistrate's decision will remain uncontested, much less ultimately lead to a reduced amount of tax due.[8] Accordingly, even if the court were to conclude that taxpayers in this case have left unappealed those portions of the magistrate's decision that establish their cost of goods sold and allowable deductions, and even if the department were found to have not challenged those amounts in this division, taxpayers still would be obliged to pay the "tax assessed," plus penalties and interest, all as shown on the department's Notice of Assessment, unless the court concludes that requiring them to do so would impose an undue hardship.

## B.  *Taxpayers' Claim of Undue Hardship*

Turning to taxpayers' claim of undue hardship, taxpayers allege, under penalty for false swearing, that their sole income consists of each spouse's social security and a modest amount of rent, and that their regular annual living expenses exceed their income by nearly $30,000. They also list a very large amount of "projected" annual assisted living expenses ("Asst.-Living-Annual, projected +") that dwarfs their income and approaches the total value they list for all their assets. Taxpayers list amounts in bank accounts and IRAs that are substantial in total. They list several older vehicles of modest value. Finally, taxpayers list three items of real property: their home in Coloma, California; a rental property in Ashland, Oregon; and a lot in Ashland. They allege a cumulative value of $408,000 for the real property alone, with no amounts owing.

The department objects strenuously to taxpayers' motion, putting forward evidence that, among other things, taxpayers' affidavit omits valuable real property near South

---

[7] For example, if a taxpayer were to appeal to this division only 40 days after the date of entry of the magistrate's decision, the department would still have nearly three weeks to file its own appeal of portions of the decision that favored the taxpayer. *See* ORS 305.501(5)(a).

[8] It also bears mentioning that, as the department points out, even a taxpayer's appeal of fewer than all issues decided by the magistrate could result in the taxpayer owing a total amount that exceeds the tax, penalties, and interest stated on the notice of assessment. *See* ORS 305.575 (court has jurisdiction to determine correct amount of deficiency, even if greater or less than assessment).

Lake Tahoe that they own through a revocable living trust; that they have understated the value of the two Oregon properties that they listed in the affidavit; and that they gave their son two additional Oregon properties for no consideration three weeks after the department notified them of the tax deficiency at issue in this case. The department derives its evidence from testimony by or on behalf of taxpayers, or documentary evidence submitted, in prior litigation in this court. The department also urges the court to reject taxpayers' claim of "projected" annual assisted living expenses as lacking substantiation. The department urges that, if the court does not reject taxpayers' affidavit outright and dismiss their appeal, the court should order taxpayers to provide additional information and supporting documents as set forth in an Appendix attached to the Objection. The court finds the requirement of additional information and documents reasonable given the specificity of the department's allegations and supporting evidence.

In their filings dated after the department's Objection, Taxpayers provide no substantive response to the department's evidence. Regarding the real property issues, taxpayers (through Sheri Hillenga) respond: "I will gladly, before the Judge, explain the reasons for any real estate transactions, which to date have NOT been asked by a Judge." Taxpayers offer no substantiation of the "projected" annual assisted living expenses or any other items. Instead, taxpayers primarily repeat their list of alleged errors in the magistrate's decision, as well as their demand for an "updated calculation" of the amount they owe.

C.   *Conclusion*

The court orders taxpayers to either pay the tax, penalties, and interest as shown in the department's Notice of Assessment or submit a supplemental hardship affidavit, under penalty for false swearing, addressing in full each of items 1 through 5 in the Appendix to the department's Objection, with supporting documents as requested in each such item. Taxpayers had an opportunity to address those points in response to the department's Objection, but they did not, perhaps relying on their legal argument regarding the amount of the assessment. Having resolved the legal

argument, the court will dismiss taxpayers' appeal if, 30 days after this order, they have failed to pay the tax, penalties, and interest or file their supplemental affidavit and supporting documents. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Stay of Payment of Income Tax is denied.